**RONNIE SNOW**                                                                    **PLAINTIFF**

**v.**

**KENTUCKY STATE REFORMATORY** *et al*.                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronnie Snow filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court upon initial review of the second amended complaint pursuant to 28 U.S.C. § 1915A. Plaintiff also filed an application to proceed without prepayment of fees along with his second amended complaint. Plaintiff having already been granted *in forma pauperis* status in this action, **IT IS ORDERED** that the application (DN 27) is **DENIED as moot**.

Upon review of the complaint, for the reasons stated below, the Court will dismiss some of Plaintiff's claims and allow others to proceed for further development.

## I. PROCEDURAL HISTORY

Plaintiff is a convicted inmate who was formerly housed at the Kentucky State Reformatory (KSR). In the original complaint, Plaintiff stated that he had filed a Do Not Resuscitate Order (DNR) with Correct Care Solutions.[1] Plaintiff asserted that on May 30, 2016, he had a medical emergency, and CPR was administered on him in violation of the DNR. He alleged that Defendants showed deliberate indifference to his medical needs in violating the DNR. Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed

---

[1] In the original complaint, Plaintiff named "Correct Care Solution" as a Defendant. In the second amended complaint, he names this Defendant as "Correct Care Solutions." For consistency, the Court will refer to this Defendant as Correct Care Solutions in this Memorandum Opinion and Order. The Court will also direct the Clerk of Court to change the name of this Defendant in the docket sheet.

some of Plaintiff's claims and allowed claims to proceed against Correct Care Solutions; Baptist Healthcare Systems, Inc. (Baptist); and RN Shannon Hardesty in her individual and official capacities.

After the Court conducted initial review, Plaintiff filed an amended complaint. However, it was not filed on the Court's approved § 1983 form and did not identify in what capacity(ies) Plaintiff was suing the newly named Defendants. Therefore, the Court ordered Plaintiff to file a second amended complaint on this Court's approved § 1983 form. The Court instructed Plaintiff that the second amended complaint would supersede the amended complaint and that the Court would conduct initial review of the second amended complaint in accordance with § 1915A  The Court will now undertake initial review of the second amended complaint.

## II.  ALLEGATIONS IN SECOND AMENDED COMPLAINT

In the second amended complaint, in both the case caption and in the section of the complaint form where Defendants are to be listed, Plaintiff names the following Defendants: Correction Care Solutions; Baptist; Dr. Subin Jain, identified as a heart surgeon at Baptist Hospital; Michael Verdi, a "prison officer" at KSR; Shannon Hardesty, a medical nurse at KSR; and Dr. Elton Amos, the Medical Director at KSR. Plaintiff indicates that he is suing Defendants in their individual and official capacities.

In the body of his complaint, Plaintiff has a handwritten section entitled "Defendants." Therein, he lists the following:  James Erwin, identified as the "director/commissioner" of the Kentucky Department of Corrections (KDOC); Aaron Smith, the Warden of KSR; Correct Care Solutions;  Baptist; "Oldham County EMS and/or Oldham County EMS personel that transported Snow from KSR to Baptist medical system hospital . . . "; Sandy Hedges; Michael Verdi; Ronnie Whitaker; James Holcomb; Jeanette Sisco; Officer Kaelin; and Shannon Hardesty.  He does not state in what capacity he is suing Defendants listed in in this section.  For the purposes of this

initial review, the Court will consider the individuals listed in this section as Defendants to this action. Because Plaintiff sues all other Defendants in their individual and official capacities and because he seeks punitive damages, the Court will construe the complaint as suing these Defendants in their individual and official capacities. *See Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (en banc) ("When a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings" to ascertain whether the defendant has been notified of the potential for personal liability.).

Under a heading labeled "Count One," Plaintiff states that he "signed into effect a 'do not resuscitate order'" with Correct Care Solutions on July 23, 2014. He asserts that on May 30, 2016,[2] he had a medical alert after he fell out of his wheelchair to which Hardesty and Verdi responded and "started performing CPR upon arriving . . . without verifying if Snow had in effect any DNR order or other medical alerts." Plaintiff states that Hardesty contacted Sisco and advised her that an ambulance was needed immediately and that CPR was being performed on Plaintiff. He states, "At no time did the defendants verify or check to see if Snow had any DNR order in his medical file."

Plaintiff further states that Sisco contacted Hedges to advise her that an ambulance was needed and Hedges responded that she would be driving the ambulance with a crew of inmate personnel. He asserts that Whitaker contacted an unnamed Defendant to advise her "that medical was requesting for Oldham County EMS to respond to KSR and to transport Snow to Baptist Healthcare in Louisville, Ky to the emergency room." Plaintiff maintains, "At no time during these medical alerts did any of the defendants verify what, if any medical issues Snow had and/or if there were any medical DNR orders in effect all in violation of Snow's rights."

_____

[2] Plaintiff states the date as May 30, 2015, in the amended complaint. However, in the original complaint, Plaintiff stated that the incident occurred on May 30, 2016, and the attachments to the complaint confirm that it occurred in 2016, rather than 2015.

Plaintiff continues that after Oldham County EMS arrived at KSR they "took over performing medical CPR and started the process of transporting Snow to the hospital for medical treatment." He states that when he arrived at Baptist Hospital "Dr. Subin Jain took over the care and treatment of Snow. At no time did Dr. Subin and/or Baptist Healthcare verify and/or check to see if Snow had any alerts or other medical conditions with the defendants CCS in violation of Snow's rights as stated herein."

Plaintiff further states that following:

The [KDOC] policy and procedure (CPP 13.11) and an interpretation of the policy was a moving force behind the rights of Snow being violated due to the language in the policy not insuring that the inmate population who sign into effect any DNR under order has in their possession verification that they have in fact signed a DNR order.

He maintains, "The policy only states that a notation will be placed in an inmate's file that a DNR order has been issued. This policy is in violation of Snow's rights to proper medical care due to not meeting the standards that will allow him the medical treatment he is entitled to." Plaintiff asserts that Defendants did not issue him "any medical alert tag [and]/or medical id card and/or bracelet that would show that he had a DNR order in effect and due to this act and admission of the Defendant Snow's rights to proper medical care has been violated."

Plaintiff maintains that "the named Defendants collectively have conspired together to hide the event that transpired concerning May 30th medical emergency with plaintiff which is one more reason it took defendant an extended amount of time to file his complaint."

Under the heading "Count Two," Plaintiff states that "the defendants are violating his rights, due to them refusing to provide him with an appropriate wheelchair that can accommodate his needs." Plaintiff asserts that he has "one arm that was amputated in his youth, combined with heart condition Plaintiff is required to wheel himself in a wheelchair with one arm which has caused plaintiff further health problems and chest pain, due to over exerting

himself." Plaintiff reports that he requested Correct Care Solutions personnel to allow him to use his electric wheelchair. He states that six other inmates use electric wheelchairs. He asserts that on June 27, 2017, he "requested and received permission from Brenda Johnson assistant healthcare administrator for the use of his electric wheelchair. But Dr. Amos refused Plaintiff stating that Plaintiff did not need anything other than what he was given." He maintains that his rights "are being violated by Dr. Amos for refusing Plaintiff the ability to be able to get around without pain or discomfort." He states that as a result he is having "major chest pains and other complications and discomfort of his arm due to over exerting himself." He states that as a result he has had to miss meals and sometimes has to stop his wheelchair outside in cold weather.

Under the heading "Count Three," Plaintiff alleges violations of the Rehabilitation Act (RA) and Americans with Disabilities Act (ADA). He states that he is disabled and that "Defendants have failed and refused to reasonably accomodate the handicapps and disabilities of Plaintiff so as . . . to exclude him from participation in, or deny him the benefits of, the state/federally funded services, programs or activities of the [KDOC] and by failing to provide treatment compliant with the standards of care."

Under a second heading labeled "Count Three," Plaintiff asserts that "by virtue of the foregoing, all defendants were negligent and grossly negligent in their treatment of the plaintiff, in addition, the medical professionals responsible for the care of the plaintiff failed to meet the standards of care applicable to their profession . . . ."

Under the heading "Count Four," Plaintiff states, "Defendants intentional treatment of Plaintiff caused extreme mental and emotional distress that can not be compensated by any other cause of action in this complaint, and was so beyond the bounds of decency that it exemplifies the tort of outrage."

Under the heading "Count Five," Plaintiff writes, "Intentional obstruction/Denial of access to the Court." He states, "As a result of the foregoing, Plaintiff suffered through the defendants deliberate indifferent, - if not wreckless intentional treatment of Plaintiff, was denied due process of law, access to the court by defendants intentional efforts to obstruct justice."

As relief, Plaintiff requests compensatory and punitive damages; injunctive relief in the form of "an injunction ordering C.C.S. to allow Plaintiff to receive his electric wheelchair"; and costs.

### III.  LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404

U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be

'less stringent' with pro se complaints does not require us to conjure up unpled allegations."

*McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## IV.  ANALYSIS

Section 1983 creates no substantive rights but merely provides remedies for deprivations

of rights established elsewhere.  *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351

(6th Cir. 2001).  Two elements are required to state a claim under § 1983.  *Gomez v. Toledo*, 446

U.S. 635, 640 (1980).  "A plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

"Absent either element, a section 1983 claim will not lie."  *Christy v. Randlett*, 932 F.2d 502,

504 (6th Cir. 1991).

### A.  Claims against Erwin, Holcomb, and Kaelin

Plaintiff lists Erwin, Holcomb, and Kaelin as Defendants, but the complaint contains no

other reference to these individuals.  Rule 8(a) of the Federal Rules of Civil Procedure requires

that a complaint "shall contain . . . a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While the Court is aware of its duty to

construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the

Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for his

claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  To state a claim for relief,

Plaintiff must show how each Defendant is accountable because the Defendant was personally

involved in the acts about which he complains.  *See Rizzo v. Goode*, 423 U.S. 362, 375-76

(1976).  Plaintiff has not alleged any personal involvement by Erwin, Holcomb, or Kaelin, and

the claims against these Defendants must be dismissed.

Moreover, to the extent Plaintiff seeks to hold Erwin liable based on his authority as a former Commissioner of the Kentucky Department of Corrections, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). The complaint makes no factual allegations against Erwin and therefore fails to allege that he encouraged or implicitly authorized, approved, or knowingly acquiesced in any unconstitutional conduct.

Accordingly, the claims against Erwin, Holcomb, and Kaelin will be dismissed for failure to state a claim upon which relief may be granted.

**B.  Claims against Baptist and Jain**

By prior Memorandum Opinion and Order (DN 18) granting Baptist's motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court found that Baptist is not a state actor and therefore cannot be liable under § 1983. The Court need not reiterate its analysis herein. This conclusion also applies to Jain, whom Plaintiff identifies as a heart surgeon at Baptist Hospital. Accordingly, Plaintiff's § 1983 claims against Baptist and Jain will be dismissed for failure to state a claim upon which relief may be granted.

Having dismissed the federal claims against Baptist and Jain, the Court will dismiss Plaintiff's state-law claims against them without prejudice. A district court may "decline to

exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Where, as here, the Court has dismissed all of Plaintiff's federal claims against these Defendants, the Court concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining to exercise supplemental jurisdiction over pendent state-law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996); *Anderson v. City of Fulton*, No. 5:18-CV-032-TBR, 2018 U.S. Dist. LEXIS 200975, at *14 (W.D. Ky. Nov. 28. 2018) ("[I]t is a matter of this Court's discretion whether to hear supplemental jurisdiction state law claims.") (citing *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007)). The Court will therefore dismiss Plaintiff's state-law claims against Baptist and Jain without prejudice.

**C. Claim regarding denial of electric wheelchair**

Plaintiff alleges that he received permission from a healthcare administrator to use an electric wheelchair but that Dr. Amos refused "stating that Plaintiff did not need anything other than what he was given." Plaintiff maintains that Amos violated his rights by denying him use of an electric wheelchair. The Court construes the allegations as a claim for deliberate indifference to a serious medical need.

A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's

health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 527, 837-47 (1994)).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate indifference claim. *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996).

Based on the allegations, Plaintiff uses a non-motorized wheelchair, he requested use of an electric wheelchair, and Amos determined that he did not need one. Plaintiff disagrees with this conclusion. It is evident that he is receiving some medical treatment. He is not being denied the use of a wheelchair altogether. Plaintiff's allegations amount to a difference of opinion over the adequacy of the treatment he is receiving. The Court will not second guess the judgment made by the prison's medical staff. *See Westlake*, 537 F.2d at 860 n.5. Therefore, Plaintiff's allegations are not sufficient to give rise to a deliberate indifference claim, and this claim will be dismissed for failure to state a claim.

**D. Claims under ADA and RA**

Plaintiff alleges violations of the ADA and RA. In support, he states, "Defendants have failed and refused to reasonably accomodate the handicapps and disabilities of Plaintiff so as . . . to exclude him from participation in, or deny him the benefits of, the state/federally funded services, programs or activities of the [KDOC] and by failing to provide treatment compliant with the standards of care."

Title II of the ADA states as follows: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the RA states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Plaintiff must show three elements to establish a violation of the ADA: (1) that he is a "qualified individual with a disability"; (2) that he was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities"; and (3) that he was excluded or denied benefits "by reason of such disability." *Weinreich v. Los Angeles Cty. Metro. Trans. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). In order to establish a violation of the RA, in addition to these three elements, Plaintiff must also show that the program or activity receives federal funds. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir. 1996).

Upon review of the complaint, the Court finds that Plaintiff states no facts to describe how he was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities" or that he was denied any benefit "by reason of a disability." He merely

recites the statutory language. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). To the extent Plaintiff may point to the denial of his request to use an electronic wheelchair, as stated above, it is evident that Plaintiff has been issued a non-motorized wheelchair. The Court finds that the complaint fails to provide sufficient content to support a claim for relief under the ADA or RA, and these claims will be dismissed on this basis.

**E. Claim alleging denial of access to the court**

Plaintiff alleges that Defendants denied him access to the court. The Court construes the allegations as alleging that he was denied his right of access to the courts under the First Amendment. Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right, however, is not without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. at 351. "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal citations omitted). Plaintiff does not allege that he suffered any actual injury or prejudice to this action or any other legal action. Accordingly, Plaintiff's

claim that he was denied access to the courts will be dismissed for failure to state a claim upon which relief may be granted.

**F.  Claims concerning violation of Plaintiff's DNR**

Upon review, the Court will allow Plaintiff's claims under § 1983 and state-law claims of negligence and intentional infliction of emotional distress to proceed against Defendants Correct Care Solutions and Oldham County EMS, as well as Defendants Smith, Verdi, Hardesty, Hedges, Whitaker, and Sisco in their individual and official capacities.

Plaintiff names as a Defendant "Oldham County EMS and/or Oldham County EMS personel that transported Snow from KSR to Baptist medical system hospital . . . ."  Because Plaintiff names no specific personnel as Defendants, he has failed to give any such Defendant "fair notice of the basis for his claims," *Swierkiewicz v. Sorema N.A.*, 534 U.S. at 514. Therefore, any claims against Oldham County EMS personnel will be dismissed for failure to state a claim upon which relief may be granted.

**V.**

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's claims against Defendants Erwin, Holcomb, Kaelin, Baptist, Jain, and Oldham County EMS personnel; his claim regarding the denial of use of an electric wheelchair; claims under the ADA and RA; and claim alleging denial of access to the court are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED to change the name** of Defendant Correct Care Solution to Correct Care Solutions in the docket sheet.

13

Because no claims remain against Defendants Erwin, Holcomb, Kaelin, Baptist, Jain, Amos, and Oldham County EMS personnel, the Clerk of Court is **DIRECTED to terminate them** as parties to this action.

The Court having dismissed Defendant Baptist as a party to this action, **IT IS ORDERED** that Baptist's motion to dismiss the second amended complaint under Fed. R. Civ. P. 12(b)(6) (DN 29) is **DENIED as moot**.

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to proceed. In allowing the claims to go forward, the Court passes no judgment on their merit or ultimate outcome.

Date:      June 26, 2019

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:      Plaintiff, *pro se*
         Counsel of record
         Defendants
4411.010