UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17CV-P521-CRS

RONNIE SNOW                                                                                    PLAINTIFF

v.

KENTUCKY STATE REFORMATORY *et al*.                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronnie Snow filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on the motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Correct Care Solutions, LLC (CCS) and Shannon Hardesty (DN 34). Plaintiff filed a motion captioned as a "motion to show cause and reply" (DN 40) to the motion to dismiss. The Court construes the motion as requesting to file a response to the motion to dismiss and will grant the motion. Defendants CCS and Hardesty filed a reply (DN 41). For the reasons stated below, the motion to dismiss will be granted. Because the Court finds that the complaint fails to state constitutional or state-law claims against any Defendant, the Court will dismiss the action against all Defendants by separate Order.

### I. ALLEGATIONS AGAINST DEFENDANTS CCS AND HARDESTY WHICH SURVIVED INITIAL REVIEW

Plaintiff was a convicted inmate at the Kentucky State Reformatory (KSR) at the time pertinent to the complaint. Upon initial screening of the action pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), the Court allowed Plaintiff's § 1983 claims and state-law claims of negligence and intentional infliction of emotional distress to proceed against Defendant

CCS and Defendant Hardesty, whom Plaintiff identified as an employee of CCS, in her individual and official capacities based on the facts that follow.[1]

Plaintiff stated that he "signed into effect a 'do not resuscitate order [DNR]'" with Defendant CCS on July 23, 2014. He asserted that on May 30, 2016, he had a medical alert after he fell out of his wheelchair and was unconscious. He maintained that Defendants Hardesty and Verdi responded and "started performing [cardiopulmonary resuscitation] CPR upon arriving . . . without verifying if Snow had in effect any DNR order or other medical alerts." Plaintiff stated that Defendant Hardesty contacted Defendant Sisco and advised her that an ambulance was needed immediately and that CPR was being performed on Plaintiff. He stated, "At no time did the defendants verify or check to see if Snow had any DNR order in his medical file."

Plaintiff further reported that, after communications among various KSR personnel as detailed in the complaint, an Oldham County EMS ambulance transported Plaintiff to the emergency room of Baptist Hospital, where he was admitted from May 30, 2016, to June 8, 2016. Plaintiff maintained, "At no time during these medical alerts did any of the defendants verify what, if any medical issues Snow had and/or if there were any medical DNR orders in effect all in violation of Snow's rights."

Plaintiff further stated that Kentucky Department of Corrections policy did not "insur[]e that the inmate population who sign into effect any DNR under order has in their possession verification that they have in fact signed a DNR order." He maintained, "The policy only states that a notation will be placed in an inmate's file that a DNR order has been issued. This policy is in violation of Snow's rights to proper medical care due to not meeting the standards that will allow him the medical treatment he is entitled to." Plaintiff asserted that Defendants did not

---

[1] The Court also allowed Plaintiff's § 1983 claims and state-law claims of negligence and intentional infliction of emotional distress to proceed against Defendants Aaron Smith, Michael Verdi, Sandy Hedges, Ronnie Whitaker, and Jeanette Sisco in their individual and official capacities and against Defendant Oldham County EMS.

issue him "any medical alert tag [and]/or medical id card and/or bracelet that would show that he had a DNR order in effect and due to this act and admission of the Defendant Snow's rights to proper medical care has been violated."

Plaintiff further stated, "Defendants intentional treatment of Plaintiff caused extreme mental and emotional distress that can not be compensated by any other cause of action in this complaint, and was so beyond the bounds of decency that it exemplifies the tort of outrage."

## II. STANDARD

Under Fed. R. Civ. P. 12(b)(6), to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief[.]" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555). In addition, "[a] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. ANALYSIS

#### *A. Eighth Amendment*

Defendants maintain that Plaintiff's claim against Defendant Hardesty in her individual capacity should be dismissed on grounds that Plaintiff failed to state a claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment. They argue that Plaintiff's allegations against Defendant Hardesty "are based upon her administering life-saving CPR to him in contravention of a DNR order . . . . Plaintiff has not alleged, nor can he establish, that Nurse Hardesty ha[d] subjective awareness of his DNR order or that she was deliberately indifferent to any serious medical need." They argue that "it cannot be reasonably asserted that [Defendant Hardesty] acted with deliberate indifference sufficient to state a claim upon which relief can be granted; indeed, performing emergency life-saving treatment is the antithesis of being deliberately indifferent to a serious medical need."

A claim of deliberate indifference to serious medical needs under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take

4

reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 527, 837-47 (1994)).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate indifference claim. *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996).

Upon review of the complaint and second amended complaint,[2] it is abundantly clear that Plaintiff received medical treatment. Plaintiff's dispute is with the course of treatment he received, which does not give rise to an Eighth Amendment deliberate indifference claim. Moreover, Plaintiff does not allege that any Defendant was aware of Plaintiff's DNR and knowingly or intentionally applied CPR in spite of it. His claims boil down to negligence on the part of Defendant Hardesty and the other Defendants in taking action in what Plaintiff alleges to be a life-threatening emergency to save his life. The Eighth Amendment jurisprudence does not permit the Court to second guess the medical judgments made by the prison staff under those circumstances. *See, e.g., Westlake*, 537 F.2d at 860 n.5. Accordingly, Plaintiff fails to state a

---

[2] The Court ordered that the second amended complaint (DN 26) would supersede the first amended complaint. *See* DN 21.

deliberate indifference claim against any Defendant. The Court, therefore, will dismiss the Eighth Amendment deliberate indifference claims against CCS and Hardesty pursuant Fed. R. Civ. P. 12(b)(6) and against all other Defendants under 28 U.S.C. § 1915(e)(2)(B)(ii).[3]

### *B. Fourteenth Amendment*

Defendants CCS and Hardesty do not address Plaintiff's allegations under the Due Process Clause of the Fourteenth Amendment. However, the Court will also examine whether the complaint states a claim under the Fourteenth Amendment. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Supreme Court has "assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) ("It cannot be disputed that the Due Process Clause protects an interest in life as well as an interest in refusing life-sustaining medical treatment.")). In *Glucksberg*, the Supreme Court declined to hold that a state's ban on physician-assisted suicide violated the Due Process Clause. The Court cautioned as follows:

> But we "have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins [v. Harker Heights*, 503 U.S. 115, 125 (1992)]. By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore "exercise the utmost care whenever we

---

[3] The Court has the authority to review the action and dismiss the case "at any time" if the Court determines that an action fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (holding that "[a] case that may not initially appear to meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section"), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

> are asked to break new ground in this field," *ibid*, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court. *Moore [v. East Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion)].

*Id.*

The instant case presents a novel legal argument. The Court is aware of no authority for finding a violation of the Due Process Clause where, as here, prison personnel unknowingly administered CPR to an inmate in violation of an inmate's DNR. Without such authority, this Court is not inclined to "extend[] constitutional protection" to the facts alleged. *Id.*

The Court observes that in *Self v. Milyard*, No. 11-cv-813-RBJ-CBS, 2012 U.S. Dist. LEXIS 129263 (D. Colo. July 31, 2012), the District Court of Colorado addressed an inmate's claim that prison personnel failed to honor his DNR. While dismissing the claim, the court found that "it is constitutionally mandatory that a prison have in place a reasonable and effective method of assuring that an inmate's DNR directive will be honored in the event of a cardiac or respiratory failure or malfunction . . . ." *Id.* at *23. However, the case is an unpublished decision outside this circuit and cites no legal authority for making this determination. There being no Supreme Court or Sixth Circuit decision on this issue, this Court to declines to adopt the District of Colorado's conclusion.

In this case, Plaintiff was permitted to sign a DNR. Defendants did not refuse to honor Plaintiff's DNR pursuant to any stated policy. As Plaintiff states repeatedly in his complaint and second amended complaint, Defendants applied CPR without knowing that he had a DNR in place. While Defendants may have acted negligently in applying CPR to Plaintiff in violation of his DNR, the Court does not find that Defendants' unknowing action violates the Due Process Clause.

In doing so, the Court takes into account the public policy considerations surrounding the prison setting and the deference federal courts afford to state prison authorities in maintaining prison security, order, and discipline. *See Turner v. Safley*, 482 U.S. 78, 85 (1987); *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). The Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 U.S. Dist. LEXIS 126890, at *19 (E.D. Ky. Nov. 30, 2010). The Court also considers the public interest in avoiding interference with the medical judgments of prison personnel in emergent life-threatening situations.

Accordingly, the Court finds that the complaint and second amended complaint fail to state a Fourteenth Amendment claim, and the action will be dismissed on this claim against all Defendants.

### C. State-law claims

Defendants CCS and Hardesty also move to dismiss Plaintiff's state-law claims of negligence and intentional infliction of emotional distress/outrage. They maintain that Kentucky does not recognize a claim for "wrongful life," which they state is the "sole factual predicate" upon which Plaintiff bases his state-law claims against them. They also maintain that the claim for intentional infliction of emotional distress must be dismissed because Kentucky law does not permit a that claim to stand when the plaintiff may seek redress through a traditional tort such as negligence.

The elements of a negligence claim are well-known: duty, breach, and consequent injury. Assuming *arguendo* that Plaintiff meets the elements of duty and breach, Plaintiff must establish an injury from Defendants' actions. The only injury Plaintiff can allege is that he is still alive. However, the Kentucky Supreme Court has held that a plaintiff cannot assert a negligence claim based on "wrongful life." *Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 691 (Ky. 2003). In *Grubbs*, the court examined negligence claims brought by two families who alleged that the defendant medical providers failed to diagnose pre-natal abnormalities and that, if diagnosed, would have caused them to terminate the pregnancies. *Id.* at 685-86. The Kentucky Supreme Court rejected the plaintiffs' negligence claims holding that they could not establish an injury. In so doing, the Kentucky Supreme Court declined to find "'that the existence of a human life can constitute an injury cognizable at law.'" *Id.* (quoting *Azzolino v. Dingfelder*, 337 S.E.2d 528, 534 (N.C. 1985)).

Similarly, in the instant case, Plaintiff's alleged injury is that he is alive. Because Plaintiff cannot establish an injury under Kentucky law, the negligence claims against all Defendants must be dismissed for failure to state a claim upon which relief may be granted.

Furthermore, a prima facie case for intentional infliction of emotional distress/outrage requires that: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788-89 (Ky. 2004) (citing *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)). In assessing what constitutes outrageous conduct, Kentucky courts have looked to the commentary of the Restatement (Second) of Torts § 46(1) which explains:

> Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46(1) cmt. d (1965) (emphasis added).

Upon review of the allegations in the complaint and second amended complaint, as stated above, the actions of Defendants in failing to honor Plaintiff's DNR by applying CPR to him were not intentional. The Court finds that Defendants' actions in saving Plaintiff's life were not atrocious or intolerable in a civilized community and, therefore, do not meet the standard for an intentional infliction of emotional distress/outrage claim. Accordingly, this claim must also be dismissed against all Defendants for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's "motion to show cause and reply" (DN 40) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to dismiss by Defendants CCS and Hardesty (DN 34) is **GRANTED**.

Because the Court finds that Plaintiff has failed to state a constitutional or state-law claim, the action against all Defendants will be dismissed by separate Order.

Date: December 2, 2019

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
  Counsel of record
4411.010

11